PAGES 1 - 31

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SALLIE KIM

```
CRISTA RAMOS, ET AL.,              )
                                   )
            PLAINTIFFS,            )
                                   )
  VS.                              )  CASE NO. 18-01554 EMC
                                   )
KIRSTJEN NIELSEN, SECRETARY OF     )
HOMELAND SECURITY; ET AL.,         )
                                   )  SAN FRANCISCO, CALIFORNIA
            DEFENDANTS.            )  THURSDAY
                                   )  AUGUST 2, 2018
_____    )
```

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**

**RECORDING  8:00 A.M.  - 8:36 A.M.**

**APPEARANCES:**

**FOR PLAINTIFF**            SIDLEY AUSTIN LLP
                            555 W. FIFTH STREET
                            SUITE 4000
                            LOS ANGELES, CA 90013
                    **BY:   SEAN ASHLEY COMMONS, ESQUIRE**


**FOR DEFENDANT**            UNITED STATES DEPARTMENT OF JUSTICE
                            CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
                            1100 L STREET, NW,
                            SUITE 11212
                            WASHINGTON, DC 20005
                    **BY:   KEVIN M. SNELL, TRIAL ATTORNEY**
                            (VIA COURTCALL)


***TRANSCRIBED BY:  JOAN MARIE COLUMBINI, CSR #5435, RPR***
***                  RETIRED OFFICIAL COURT REPORTER, USDC***

```
 1   THURSDAY, AUGUST 2, 2018                          8:00 A.M.
 2              ELECTRONICALLY RECORDED PROCEEDINGS
 3        THE CLERK:  CALLING CIVIL CASE 18-1554, RAMOS, ET AL.
 4   VERSUS NIELSEN, ET AL.
 5        COUNSEL, PLEASE STATE YOUR APPEARANCES BEGINNING WITH
 6   PLAINTIFFS.
 7        MR. COMMONS:  GOOD MORNING, YOUR HONOR.  SEAN COMMONS
 8   ON BEHALF OF THE PLAINTIFFS.
 9        THE COURT:  GOOD MORNING.
10        MR. COMMONS:  GOOD MORNING.
11        MR. SNELL:  GOOD, YOUR HONOR.  THIS IS KEVIN SNELL
12   FROM THE DEPARTMENT OF JUSTICE ON BEHALF OF THE DEFENDANTS, AND
13   WITH ME ARE RHETT MARTIN AND JOHN TYLER.
14        THE COURT:  THANK YOU.  AND BECAUSE WE'RE ON THE
15   PHONE, I WOULD ASK, MR. SNELL, THAT YOU BE THE ONLY SPEAKER SO
16   I DON'T GET CONFUSED.
17        MR. SNELL:  UNDERSTOOD, YOUR HONOR.
18        THE COURT:  OKAY.  THANK YOU.
19        SO THANK YOU FOR APPEARING ON SUCH SHORT NOTICE.  I
20   WANTED JUST TO GET SOME QUESTIONS CLARIFIED, SO THAT'S WHY I
21   ISSUED THE ORDER YESTERDAY ABOUT THE REMAINING ISSUES THAT I
22   WASN'T SURE ABOUT.  AND SO LET ME START FIRST WITH THE SEARCH
23   TERMS AND THE SELECTED CUSTODIANS, AND MAYBE LET ME ASK
24   MR. SNELL, AND THEN I'LL ASK MR. COMMONS, TO ADDRESS WHAT THE
25   PARTIES DID TO MEET AND CONFER ON THE MANNER IN WHICH THE
```

1   DEFENDANTS MADE THEIR DECISIONS ABOUT THE SEARCH TERMS AND THE

2   CUSTODIANS.

3          **MR. SNELL:**  YES, YOUR HONOR.  THIS IS KEVIN SNELL

4   FROM THE DEPARTMENT OF JUSTICE.

5          SO THE DEPARTMENT OF HOMELAND SECURITY WAS EXTREMELY

6   PROACTIVE, AND VERY EARLY ON IN MAY OF 2018 BEGAN ITS SEARCH

7   WHEN IT STARTED TO LOOK FOR DOCUMENTS FOR THE ADMINISTRATIVE

8   RECORD, WHICH IS WHAT JUDGE CHEN HAD INSTRUCTED THE DEPARTMENT

9   OF HOMELAND SECURITY TO DO.

10          WHEN IT DID THAT, THE DEPARTMENT OF HOMELAND SECURITY

11   SPOKE TO THE FRONT OFFICE JUST TO DETERMINE, YOU KNOW, WHO --

12   WHICH CUSTODIANS WOULD HAVE INPUT INTO THIS PROCESS THAT THEY

13   SHOULD HAVE THEIR RECORDS COLLECTED.

14          AND THEN THOSE PEOPLE ALSO GAVE INFORMATION ABOUT

15   OTHER CUSTODIANS.  SO THEN WE WENT AND TALKED TO THOSE

16   CUSTODIANS.  AND FROM THAT WE DEVELOPED A LIST -- THE

17   DEPARTMENT OF HOMELAND SECURITY DEVELOPED A LIST OF

18   APPROXIMATELY 20 CUSTODIANS AND THEN APPLIED EXTREMELY BROAD

19   SEARCH TERMS SUCH THAT WE NOW HAVE APPROXIMATELY 22,500

20   DOCUMENTS.

21          IT'S MY UNDERSTANDING THAT THE SEARCH WAS RUN BEFORE

22   THE PLAINTIFFS SOUGHT TO HAVE INPUT ON THE SEARCH TERMS OR ON

23   THE CUSTODIANS.

24          **THE COURT:**  OKAY.  THANK YOU.

25          AND SO, MR. COMMONS, WHAT DO YOU THINK IS THE

1   ISSUE -- WHAT IS THE CONCERN THAT YOU HAVE ABOUT THE CUSTODIANS

2   FIRST AND THEN THE SEARCH TERMS SECONDLY?

3            **MR. COMMONS:**  SURE.  THANK YOU, YOUR HONOR.

4            AND JUST TO ALSO ADDRESS YOUR QUESTION ABOUT THE

5   PARTIES' EFFORTS TO MEET AND CONFER ON THIS, WE HAD ALERTED THE

6   DISTRICT COURT BACK IN JUNE, SO JUNE 15TH, THAT WE WEREN'T EVEN

7   AWARE -- OR THE DEFENDANTS WEREN'T WILLING AT THAT TIME TO

8   DISCLOSE THE CUSTODIANS OR SEARCH TERMS.  SO IT WASN'T UNTIL

9   EARLY JULY THAT WE LEARNED WHAT THEY WERE.  AND THEN ONCE WE

10  GOT DOCUMENTS, WE THEN PROVIDED THEM WITH COMMENTS ABOUT WHAT

11  WE THOUGHT SHOULD BE -- WHO WE THOUGHT SHOULD BE CUSTODIANS AND

12  WHAT WE THOUGHT SHOULD BE THE SEARCH TERMS.

13           AS FAR AS THE CUSTODIANS, WE HAVE A COUPLE VERY

14  SPECIFIC REASONS WHY WE BELIEVE THE LIST ISN'T COMPLETE.  I'LL

15  JUST GO THROUGH THREE OF THEM.

16           SO, FIRST OFF, WE HAVE A DEPOSITION TOMORROW OF A

17  PERSON MOST KNOWLEDGEABLE.  THIS IS AN INDIVIDUAL THE

18  GOVERNMENT HAS DESIGNATED AS THEIR -- YOU KNOW, THEIR

19  REPRESENTATIVE TO DISCUSS SOME OF THE KEY ISSUES IN THIS CASE,

20  AND THIS IS AN INDIVIDUAL WHO THEY DID NOT IDENTIFY AS A

21  CUSTODIAN FOR PURPOSES OF GATHERING DOCUMENTS.  IT SEEMS PRETTY

22  STRAIGHTFORWARD TO US IF THE GOVERNMENT THINKS THIS INDIVIDUAL

23  IS THE PERSON MOST KNOWLEDGEABLE, THEN IT'S A FAIR ASSUMPTION

24  THAT HE WOULD BE A RELEVANT CUSTODIAN IN TERMS OF GATHERING

25  RESPONSIVE MATERIALS.

1          THE OTHER REASON WE BELIEVE THE LIST IS INCOMPLETE IS

2     BEFORE THE DISTRICT COURT ORDERED DEFENDANTS TO RESPOND TO

3     REQUEST FOR PRODUCTION NUMBER FOUR, WHICH IS ONE OF THE

4     REQUESTS THE COURT DIRECTED BE RESPONDED TO BY JULY 9TH.

5          THE DEFENDANTS OBJECTED TO IT ON THE GROUND THAT THEY

6     WOULD NEED IDENTIFY, QUOTE, "SEVERAL MORE CUSTODIANS FROM

7     VARIOUS COMPONENTS WITHIN DHS AND DHS HEADQUARTERS."  THAT'S AN

8     EXACT QUOTE FROM PAGE 8 OF DOCKET 28.

9          AND THIS IS AGAIN -- THEY'RE SAYING THAT AT THAT

10    POINT THEY HAD IDENTIFIED THEIR 20 CUSTODIANS, AND THEY WERE

11    TELLING THE DISTRICT COURT IF THEY WERE GOING TO RESPOND TO RFP

12    NUMBER 4 THAT THEY'VE NOW BEEN ORDERED TO RESPOND TO, THEY

13    WOULD NEED TO IDENTIFY SEVERAL MORE CUSTODIANS AND THEY HAVEN'T

14    DONE THAT.

15         THE OTHER REASON WE BELIEVE THAT THE CUSTODIAN LIST

16    IS INCOMPLETE IS THAT WE'VE HAD ACCESS TO FOIA PRODUCTIONS THAT

17    HAVE BEEN MADE PUBLICLY AVAILABLE, AND WE'VE DONE OUR OWN DUE

18    DILIGENCE IN TERMS OF TRYING TO CONDUCT A FORMAL INVESTIGATION.

19    AND THEN ON TOP OF IT, AS WE HAVE BEEN GETTING SOME DOCUMENTS,

20    WE'RE ABLE TO REVIEW THEM AND IDENTIFY PEOPLE.

21         AND SO SORT OF BASED ON ALL OF THOSE THINGS, WE HAVE

22    IDENTIFIED FOR THEM A LIST OF -- AT LEAST AS OF THE LAST TIME

23    WE SENT THEM A LIST, WE SENT THEM SEVEN INDIVIDUALS, AND WE

24    ASKED THEM TO INCLUDE THEM AS CUSTODIANS.  AND THESE ARE

25    PEOPLE, AGAIN, ONE OF THEM TURNED OUT TO BE THEIR PERSON MOST

1    KNOWLEDGEABLE.  OTHER PEOPLE ARE FAIRLY SENIOR, AND WE'RE

2    SEEING THEM EITHER IN THE FOIA PRODUCTIONS OR OUR PRODUCTIONS

3    AS HAVING SOME KIND OF SPECIFIC ROLE THAT WOULD SUGGEST IT WAS

4    NOT ADMINISTERIAL, BUT THAT THEY'RE PLAYING A MEANINGFUL ROLE

5    IN THE PROCESS OF DETERMINING -- EITHER GATHERING INFORMATION

6    TO MAKE DETERMINATIONS OR PROVIDING SOME KIND OF INPUT IN THE

7    PROCESS.

8           AND THAT'S WHY FROM THE PLAINTIFF'S PERSPECTIVE WE

9    HAVE BEEN TRYING TO ENGAGE WITH THEM AND REQUEST THAT THEY ADD

10   SOME KIND OF CUSTODIANS, AT LEAST PERFORM SOME KIND OF TEST TO

11   DETERMINE WHAT DOCUMENTS WOULD BE ADDED.  AND MY UNDERSTANDING

12   FROM EVERY CONVERSATION WE'VE HAD, INCLUDING WE HAD -- THE

13   PARTIES HAD A FURTHER CONVERSATION THIS MORNING, IS THAT THEIR

14   VIEW IS ADDING ANY CUSTODIANS, EVEN THEIR PERSON MOST

15   KNOWLEDGEABLE, WOULD BE DISPROPORTIONATE, UNDULY BURDENSOME,

16   WHATEVER THE REGULAR LITANY IS.  BUT THAT'S BEEN TRUE SINCE THE

17   VERY START.  SO THAT'S BEEN THE MAJOR AREA OF CONCERN.

18          THE SEARCH TERMS ARE -- THE MAIN FOCUS WE'VE HAD

19   THERE IS THAT IF YOU ONLY SEARCH BY REQUIRING THAT THE NAME OF

20   A COUNTRY APPEAR IN THE SEARCH RESULTS, WELL, THEN THAT WOULD

21   MEAN THAT IF THERE WERE GENERAL DISCUSSIONS THAT WERE

22   APPLICABLE TO ALL THESE COUNTRIES BY AND AMONG THESE

23   CUSTODIANS, OR GENERAL STATEMENTS OF POLICY THAT WERE EQUALLY

24   APPLICABLE TO ALL OF THESE COUNTRIES, THEN WE WOULDN'T BE

25   GETTING THOSE.  WE WON'T SEE THOSE.

1          AND THIS HAS BEEN VERY MUCH A CASE WHERE WE'RE SAYING

2     THAT THERE'S BEEN A CHANGE IN POLICY, THERE'S A CHANGE IN

3     PRACTICE.  SO IT'S NOT THAT IT WOULD ONLY HAVE TO OCCUR IN THE

4     CONTEXT OF THEM SPECIFICALLY ADDRESSING ONE OF THE FOUR

5     COUNTRIES.

6          AND SINCE WE'RE NOT AT THIS STAGE TALKING ABOUT A

7     GENERALIZED SEARCH ACCRUE THE ENTIRETY OF DHS, BUT ONLY WITHIN

8     SPECIFIC CUSTODIANS, WE'RE NOT SEEING HOW RUNNING A TEST TO

9     FIND OUT WHETHER OR NOT IT ADDS 50 DOCUMENTS OR 500 DOCUMENTS

10    OR A THOUSAND, WHATEVER THE NUMBER MAY BE, BUT AT VERY MINIMUM,

11    IT WOULD MAKE SENSE TO TEST IT AND THEN THEY CAN REVIEW IT.

12         THE FACT THAT THERE MIGHT BE SOME NON-RESPONSIVE

13    DOCUMENTS WITHIN A SEARCH RESULT DOESN'T MEAN YOU DON'T EVEN

14    PERFORM THE TEST.  IT WOULD JUST MEAN THAT THEY HAVE A BASIS

15    NOT TO PRODUCE SOME SUBSET OF MATERIALS.

16         **THE COURT:**  OKAY.

17         **MR. COMMONS:**  THAT'S WHERE WE ARE FROM THE

18    PLAINTIFFS' PERSPECTIVE, YOUR HONOR.

19         **THE COURT:**  ALL RIGHT.  I UNDERSTAND THE POSITION.

20         SO HERE'S WHAT I'M GOING TO MAKE YOU DO -- AND I'M

21    SORRY BECAUSE THIS IS CREATING MORE WORK FOR YOU, FOR BOTH

22    SIDES.

23         SO, MR. COMMONS, I'M GOING TO ASK YOU TO GIVE ME THE

24    NAMES OF THE SEVEN CUSTODIANS THAT YOU WANT TO BE ADDED, AND I

25    WANT YOU TO EXPLAIN JUST IN TWO SENTENCES WHY YOU THINK THERE

```
1    ARE CUSTODIANS THAT SHOULD BE SEARCHED FOR PURPOSES OF THIS
2    LITIGATION AND RANK THEM IN PRIORITY.  IN OTHER WORDS, WHO IS
3    THE MOST IMPORTANT PERSON, NUMBER ONE, THAT YOU WANT TO BE
4    ADDED AS A CUSTODIAN DOWN TO NUMBER SEVEN WHO IS THE LEAST
5    IMPORTANT CUSTODIAN THAT YOU WANT TO BE ADDED.
6              AND THEN IN TERMS OF THE SEARCH PROTOCOL, I ALSO ASK
7    THAT YOU PROVIDE TO ME A LIST OF THE SEARCH TERMS THAT YOU
8    THINK -- IN OTHER WORDS, I UNDERSTAND THE ABSTRACT CONCEPTS,
9    BUT I HAVEN'T SEEN THE SPECIFIC CONCEPTS.
10             I UNDERSTAND YOUR GENERAL ISSUE, WHICH IS IF THE
11   SEARCH IS ACTUALLY ONLY BEING DONE TPS AND HONDURAS, THEN YOU
12   MIGHT MISS -- OR TPS AND, YOU KNOW, HAITI, YOU'RE GOING TO BE
13   MISSING SOME GENERAL POLICY ISSUE.
14             BUT, MR. SNELL, WHAT I'M GOING TO ASK YOU, EITHER
15   PROVIDE ME AN EXPLANATION OR IN WRITING WHAT YOU'RE DOING IN
16   TERMS OF THE SEARCH TERMS, WHAT PROTOCOL YOU'RE APPLYING IN
17   TERMS OF YOUR SEARCH BECAUSE I HAVEN'T SEEN -- I KNOW YOU HAD
18   TO DO THIS IN LETTER BRIEF FORM, SO YOU PROBABLY DIDN'T HAVE
19   THE ABILITY TO DO THAT.  DO YOU THINK YOU COULD GET THAT TO ME
20   BY MONDAY?
21             MR. SNELL:  WE WILL, YOUR HONOR.
22             CAN I JUST ASK A QUICK CLARIFICATION QUESTION?
23             THE COURT:  YES.
24             MR. SNELL:  ARE WE -- WHAT SORT OF VOLUME IN TERMS OF
25   EXPLANATION.  I KNOW YOU SAID MR. COMMONS IS LIMITED TO TWO
```

1   SENTENCE.  I DIDN'T KNOW --

2          (SIMULTANEOUS COLLOQUY.)

3          **THE COURT:**  RIGHT.  I THINK IN TERMS OF THE SEARCH

4   PROTOCOL, IF YOU CAN EXPLAIN IT IN JUST A COUPLE OF PAGES, THAT

5   WOULD BE HELPFUL TO ME, BUT IF IT REQUIRES A LENGTHIER

6   EXPLANATION, I UNDERSTAND.

7          I JUST -- I JUST WANT TO HAVE A CLEAR UNDERSTANDING

8   OF HOW THE SEARCH TERMS ARE BEING USED SO THAT I'LL -- SO THAT

9   I'LL BE ABLE TO AT LEAST GET SOME SPECIFICS.  BUT I DON'T

10  WANT -- I DON'T WANT TO BURDEN YOU WITH -- I DON'T WANT TO

11  BURDEN EITHER SIDE.  I'M TRYING TO MAKE IT EASIER BY HAVING YOU

12  SEND ME SOMETHING SHORTER, ALTHOUGH I REALIZE IN THE WORLD OF

13  LAW, MAKING SOMETHING SHORTER SOMETIMES REQUIRES MORE WORK.  SO

14  I'M REALISTIC ABOUT THAT.  BUT I'M TRYING TO GET SOME CLEAR

15  SENSE OF WHAT'S GOING ON WITHOUT REQUIRING THE PARTIES TO

16  SUBMIT LENGTHY BRIEFING.  THAT'S REALLY MY GOAL.

17         **MR. SNELL:**  I UNDERSTAND, YOUR HONOR.  THIS IS KEVIN

18  SNELL AGAIN.

19         IF IS IT OKAY IF I JUST RESPOND TO A COUPLE OF

20  POINTS --

21         **THE COURT:**  YES, YOU MAY.

22         **MR. SNELL:**  -- MR. COMMONS RAISED?

23         **THE COURT:**  YES, GO AHEAD.

24         **MR. SNELL:**  THANK YOU.

25         SO THE PLAINTIFFS HAVE KIND OF PAINTED THIS PICTURE

1  THAT, YOU KNOW, IT WOULD BE A -- YOU KNOW, WHY NOT JUST TAKE A

2  QUICK LOOK TO SEE HOW RESPONSIVE OUR SEARCH IS, AND, OF COURSE,

3  THE DEPARTMENT OF HOMELAND SECURITY IS A SUBJECT MATTER EXPERT.

4  THEY DO KNOW WHO THE CUSTODIANS ARE.  (INDISCERNIBLE) THE

5  CUSTODIANS.

6        AND I JUST WANT TO FLAG THIS FOR YOUR HONOR THAT, YOU

7  KNOW, TO DATE, ILLUSTRATING HOW BROAD OF A SEARCH WE HAVE DONE,

8  WE HAVE APPROXIMATELY 6,150 DOCUMENTS THAT HAVE BEEN FOUND TO

9  BE NOT RESPONSIVE.

10        AND SO, YOU KNOW, THE NOTION THAT WE CAN RUN A

11  SUPPLEMENTAL SEARCH AND THAT WE CAN QUICKLY, YOU KNOW, CHECK TO

12  SEE HOW -- YOU KNOW, WHAT THE DELTA IS, IS JUST KIND OF BELIED

13  BY THE NOTION THAT WE NEED TO HAVE EYES LOOK OVER, YOU KNOW,

14  THE, TO DATE, APPROXIMATELY 6,150 -- 6,150 DOCUMENTS.

15        AND SO, YOU KNOW, WE WOULD, OF COURSE, AS MR. COMMONS

16  REFERENCED EARLIER, YOU KNOW, SUGGEST -- AND IT'S OUR POSITION

17  THAT IF A SUPPLEMENTAL SEARCH WERE TO GO FORWARD, THAT THAT'S

18  JUST A DISPROPORTIONATE TO THE NEEDS OF THIS CASE, PARTICULARLY

19  WHEN WE'RE JUST ON A PRE-- PARTICULARLY BEFORE THE PRELIMINARY.

20        **THE COURT:**  AND I DO UNDERSTAND THAT, AND I'M MINDFUL

21  OF THAT, BECAUSE I HAVE ORDERED THE GOVERNMENT TO RESPOND BY A

22  CERTAIN DEADLINE, AND I KNOW THAT'S BURDENSOME TO THE

23  GOVERNMENT.  BUT IT OCCURS TO ME THIS IS A DISPUTE THAT'S GOING

24  TO OCCUR BEYOND THE PRELIMINARY INJUNCTION.  IN OTHER WORDS,

25  THE CASE IS GOING FORWARD BECAUSE JUDGE CHEN HAS DENIED THE

1  MOTION TO DISMISS.  SO YOU -- THIS IS GOING TO BE A FIGHT

2  YOU'RE GOING TO HAVE SOON -- AT SOME POINT IN TIME.

3        SO IT COULD BE, HYPOTHETICALLY SPEAKING, THAT I SAY,

4  YOU HAVE TO PRODUCE THESE, BUT I'M GOING TO GIVE YOU MORE TIME,

5  AND I KNOW THAT THE PLAINTIFFS AREN'T GOING TO BE ABLE TO USE

6  IT FOR THEIR PRELIMINARY INJUNCTION MOTION.  BUT I ALSO KNOW

7  FROM A PRACTICAL PERSPECTIVE THAT WHEN YOU ARE RUNNING A

8  SEARCH, IF YOU ARE GOING TO DO IT AS A DEFENDANT, YOU HAVE TO

9  MAKE A DECISION ABOUT WHETHER YOU ARE GOING TO RUN ONE

10  COMPREHENSIVE SEARCH OR WHETHER YOU'RE GOING TO GO BACK AND RUN

11  ANOTHER SEARCH.  AND THAT'S POSSIBLE AS WELL.

12        SO, YOU KNOW, I JUST WANT TO GET A SENSE OF WHAT'S

13  GOING ON.  I AM MINDFUL OF THE DEADLINES.  I PUT A PRETTY HEAVY

14  BURDEN ON THE GOVERNMENT TO RESPOND BY A CERTAIN DATE, AND I'M

15  VERY CLEAR ABOUT WHAT THE PRELIMINARY INJUNCTION DEADLINES ARE.

16        AND JUST TO TELL YOU FOLKS, I DID TALK TO JUDGE CHEN

17  ABOUT THE SCHEDULE IN THIS CASE SINCE I'M NEW TO THIS

18  LITIGATION AS A DISCOVERY JUDGE, AND HE WAS QUITE CLEAR THAT

19  HE'S NOT GOING TO MOVE THE BRIEFING DATES BECAUSE, APPARENTLY,

20  ONE OF THE COUNTRY'S, TPS, EXPIRATION DATE IS COMING UP, SO

21  THERE'S A TIME URGENCY.  SO I CHECKED TO SEE WHETHER THERE WAS

22  ANY GIVE ON ANY OF THE DATES AND THERE IS NOT.

23        SO I'M THINKING ABOUT ALL OF THOSE THINGS:

24  PROPORTIONALITY, BURDEN, TIMING, WHAT HAPPENS AFTER THE

25  PRELIMINARY INJUNCTION.  ALL OF THESE ARE FOREMOST IN MY MIND.

1    BUT I DO -- YOU KNOW, I APPRECIATE THE COMMENTS THAT PEOPLE

2    HAVE GIVEN ME, AND I WILL LOOK AT THEM AND THINK ABOUT THEM,

3    AND I'M JUST BALANCING EVERYTHING, IF THAT GIVES ANYONE ANY

4    GUIDANCE.

5            SO CAN WE TURN TO THE ISSUE OF THE DELIBERATIVE

6    PROCESS PRIVILEGE?  AND THESE ARE THE SPECIFIC QUESTIONS THAT I

7    HAD:  I THINK THAT THEY ARE MOSTLY DIRECTED TOWARDS MR. SNELL,

8    SO MAYBE YOU CAN START WITH THE FIRST QUESTION, WHICH IS WHAT

9    IS THE SCOPE OF THE DOCUMENTS THAT ARE BEING WITHHELD ON THE

10   BASIS OF THE DELIBERATIVE PROCESS PRIVILEGE?

11           **MR. SNELL:**  YES, YOUR HONOR.  THANK YOU.

12           SO, THE DEFENDANTS ARE INVOKING THE DELIBERATIVE

13   PROCESS PRIVILEGE.  HOWEVER, THEY HAVE CARVED OUT ON A

14   VOLUNTARY BASIS, WITHOUT EVEN REQUEST, THEY HAVE VOLUNTARILY

15   CARVED OUT THE DECISION PACKET AND THINGS OF THAT NATURE THAT

16   WE HAVE BEEN INFORMED THAT, YOU KNOW, THE SECRETARY TOOK INTO

17   ACCOUNT OR THE ACTING SECRETARY TOOK INTO ACCOUNT WHEN SHE, YOU

18   KNOW, MADE THE TPS DETERMINATIONS THAT ARE AT ISSUE HERE.

19           WE THINK DOING THAT, ALTHOUGH WE WOULD VIEW THAT

20   MATERIAL AS STILL DELIBERATIVE, WE WOULD NEVERTHELESS AGREE TO

21   WAIVE THAT PRIVILEGE BECAUSE WE UNDERSTAND THAT THOSE DOCUMENTS

22   REFLECT THE CONSIDERATIONS THAT THE SECRETARY AND ACTING

23   SECRETARY TOOK INTO ACCOUNT, AND AS THEY FURTHER DISPEL, YOU

24   KNOW, THE ALLEGATIONS THAT PLAINTIFFS BRING IN THIS CASE.

25           WITH RESPECT TO DOCUMENTS THAT ARE, YOU KNOW, ONE

1    STEP REMOVED OR STEPS REMOVED FROM THAT, SO YOU'VE GOT, YOU

2    KNOW, FOR EXAMPLE, EMAIL CORRESPONDENCE BETWEEN, YOU KNOW,

3    LOWER LEVEL STAFFERS THAT, YOU KNOW, THAT DIDN'T MAKE THEIR WAY

4    UP TO SECRETARY FOR HER CONSIDERATION, YOU KNOW, WE VIEW THAT

5    AS BEING WITHIN THE CORE -- WE VIEW THAT AS BEING CORE

6    PROTECTED DOCUMENTS IN DELIBERATIVE PROCESS PRIVILEGE SUCH

7    THAT, YOU KNOW, INDIVIDUALS FEEL FREE TO SHARE THEIR CANDID AND

8    OPEN THOUGHTS WITHOUT FEAR OF, YOU KNOW, INTRUSIVE OR BASICALLY

9    OPERATING IN A FISHBOWL.  SO THAT'S BEEN, YOU KNOW, THE GENERAL

10   APPROACH THAT WE HAVE TAKEN.

11          THERE HAVE -- YOU KNOW, WE HAVE OBVIOUSLY -- THAT'S

12   SPEAKING GENERALLY, AND SO, YOU KNOW, WE CONTINUE TO LOOK AT

13   THE DOCUMENTS AS THEY COME UP.

14          AND SO, HOPEFULLY, THAT PROVIDES YOUR HONOR A

15   PICTURE, AND, IF YOU HAVE ANY QUESTIONS ABOUT THAT, I CAN SPEAK

16   FURTHER.

17          **THE COURT:**  WHAT IS A DECISION PACKET?

18          **MR. SNELL:**  YEAH, THAT'S A GOOD QUESTION.

19          SO MY UNDERSTANDING OF IT IS THAT A DECISION PACKAGE

20   IS A CONSTELLATION OF DIFFERENT DOCUMENTS THAT MAKE ITS WAY UP

21   TO THE SECRETARY AND HER ADVISERS.  YOU'LL HAVE, YOU KNOW, A

22   MEMO IN THAT FROM A DEPARTMENT OF HOMELAND SECURITY COMPONENT.

23   YOU WOULD ALSO HAVE, YOU KNOW, PERHAPS, I BELIEVE SOME HAVE --

24   I'M SORRY -- AND THAT COMPONENT IS USCIS.

25          YOU COULD ALSO HAVE -- AND I SHOULD PREFACE THIS WITH

1    WHAT I REFER TO AS A DECISION PACKET MAY NOT BE WHAT OTHERS DO,

2    BUT THIS IS WHAT I UNDERSTAND IT TO BE.  SO YOU HAVE, YOU KNOW,

3    IT'S LIKE A USCIS MEMO TO THE SECRETARY ADVISING HER ON THE

4    DETERMINATION.  YOU WOULD HAVE, YOU KNOW, SOMETHING FROM THE

5    DEPARTMENT OF STATE WITH THE DEPARTMENT OF STATE'S VIEWS,

6    BECAUSE, OF COURSE, DEPARTMENT OF HOMELAND SECURITY IS SUPPOSED

7    TO CONSULT WITH, YOU KNOW, THE APPROPRIATE AGENCIES IN MAKING

8    THE DETERMINATION.

9            I UNDERSTAND THAT THERE'S, YOU KNOW, DOCUMENTS ALONG

10   THOSE LINES, YOU KNOW, INPUT FROM OTHER AGENCIES APPLICABLE

11   COMPILED --

12           **THE COURT:**  WHAT ABOUT AN EMAIL -- WHAT ABOUT AN

13   EMAIL FROM A LOWER LEVEL EMPLOYEE IN THE DHS TO THE SECRETARY

14   ON THIS ISSUE BUT THAT'S NOT INCLUDED IN THE PACKAGE, HOW WOULD

15   YOU TREAT THAT?

16           **MR. SNELL:**  YEAH.  YES, YOUR HONOR.  I MEAN, I THINK

17   TO THE EXTENT THAT THAT WOULD BE PROTECTED BY THE DELIBERATIVE

18   PROCESS, WE WOULD STILL CLAIM THAT TO BE PROTECTED.

19           AGAIN, JUST TO GO BACK, WE UNDERSTAND FROM TALKING TO

20   THE ADVISERS TO THE SECRETARY THAT, YOU KNOW, THE DECISION

21   PACKET, IS -- YOU KNOW, REFLECTS THE CONSIDERATIONS THAT THE

22   SECRETARY TOOK INTO ACCOUNT WHEN, YOU KNOW, SHE MADE THE

23   DETERMINATIONS THAT ARE AT ISSUE HERE.

24           WITH RESPECT TO AN EMAIL, WE DON'T HAVE THAT SORT OF

25   ASSURANCE.

1          **THE COURT:**  OKAY.  SO -- AND WHAT IS THE SCOPE OF THE

2     DOCUMENTS THAT ARE BEING WITHHELD ON THE BASIS OF PRIVILEGE?

3          **MR. SNELL:**  ARE YOU -- IS YOUR HONOR REFERRING TO A

4     SPECIFIC NUMBER?

5          **THE COURT:**  NUMBER, PAGES.  YOU KNOW, I JUST WANT TO

6     GET A SENSE OF HOW MANY ARE INVOLVED HERE.

7          **MR. SNELL:**  YES, YOUR HONOR.  THAT'S A GOOD QUESTION.

8     I DON'T HAVE A SPECIFIC NUMBER FOR THAT PARTICULAR PRIVILEGE.

9     I CAN TELL YOU THAT THERE HAVE BEEN, OF THE DOCUMENTS THAT

10    WE'VE REVIEWED SO FAR, APPROXIMATELY 2,000 WE HAVE DEEMED

11    PRIVILEGED, AND I BELIEVE THE OVERWHELMING MAJORITY OF THOSE

12    WOULD BE -- WOULD BE ON THE BASIS OF DELIBERATIVE PROCESS.

13         **THE COURT:**  OKAY.  AND IF I ORDER YOU TO PROVIDE THEM

14    TO ME FOR IN CAMERA REVIEW, HOW WOULD YOU DO THAT?  HOW SOON

15    COULD YOU DO THAT?

16         **MR. SNELL:**  YES, YOUR HONOR.  I MEAN, THAT WOULD, OF

17    COURSE, DEPEND ON THE FORMAT THAT YOUR HONOR WOULD REQUEST.  IF

18    YOU REQUEST ELECTRONIC, WE COULD PROBABLY PULL THAT TOGETHER IN

19    A COUPLE OF DAYS ON OUR END.

20         **THE COURT:**  OKAY.

21         **MR. SNELL:**  OF COURSE, THOUGH, WE WOULD STILL NEED TO

22    FED-EX YOU FROM D.C., AND SO THAT MIGHT BUILD IN ANOTHER DAY OR

23    TWO.  IF YOUR HONOR WOULD PREFER IT IN PAPER COPY, WE'D

24    PROBABLY NEED AROUND FIVE DAYS TO GET THINGS PRINTED AND

25    ORGANIZED ON OUR END, AND THEN AGAIN, WE WOULD -- WE WOULD, YOU

1    KNOW, WE WOULD LIKELY NEED A FEW DAYS FOR THE TRANSPORTATION

2    FROM D.C. TO SAN FRANCISCO.

3            **THE COURT:**  OKAY.  I'M GOING TO THINK ABOUT WHETHER

4    I'M GOING TO ORDER YOU TO DO THAT, BECAUSE I KNOW IT'S

5    BURDENSOME AND IT'S TAKING TIME.  THE CLOCK IS TICKING AWAY.

6            SO, OKAY -- SO, THANK YOU.  THIS HAS BEEN REALLY

7    HELPFUL.  I VERY MUCH APPRECIATE THE COMMENTS THAT PEOPLE HAVE

8    MADE.  I THINK I UNDERSTAND BETTER WHAT THE ISSUES ARE, AND I

9    AM MINDFUL OF THE TIME, SO I'LL TRY TO GET YOU ANSWERS AS SOON

10   AS I CAN.

11           **MR. COMMONS:**  YOUR HONOR, THIS IS SEAN COMMONS.  DO

12   YOU MIND IF I ADDRESS ONE THING, AT LEAST ONE ISSUE ABOUT THE

13   DELIBERATIVE PROCESS, AND THEN THERE'S ALSO ONE OR TWO ITEMS --

14           (SIMULTANEOUS COLLOQUY.)

15           **THE COURT:**  SURE.

16           **MR. COMMONS:**  AT LEAST IT'S POSSIBLE THE PARTIES

17   DON'T SEE EYE TO EYE OR UNDERSTAND.

18           ON THE DELIBERATIVE PROCESS, YOUR HONOR, ONE OF THE

19   ISSUES THAT WE UNDERSTAND FROM CONFERRING WITH THE

20   DEFENDANTS -- BUT THEY'RE FREE TO CORRECT ME, OBVIOUSLY --

21   ABOUT WHAT THEY'RE ASSERTING PRIVILEGE OVER IS FACTS.  AND OUR

22   UNDERSTANDING FROM THE CASE LAW IS THERE CERTAINLY COULD BE

23   INSTANCES WHERE FACTUAL INFORMATION OR RECOUNTING FACTUAL

24   INFORMATION MAY BE SUBJECT TO PRIVILEGE IF IT'S SOMEHOW

25   INEXTRICABLY INTERTWINED WITH OPINIONS OR OPINIONS THAT PEOPLE

1    ARE EXPRESSING THAT ARE SUBJECT TO DELIBERATIVE PROCESS.  BUT

2    AS A GENERAL MATTER, THEY'RE NOT.

3         AND SO THAT'S ONE AREA ON SCOPE WHERE THE PARTIES

4    HAVE BEEN -- HAVE A DISAGREEMENT, AND IT RELATES TO WHETHER OR

5    NOT THEY ENTIRELY WITHHOLD DOCUMENTS OR WHETHER THEY HAVE TO

6    REDACT PORTIONS OF IT SO WE CAN SEE SOME OF THE FACTUAL

7    INFORMATION WHEN WE'RE TALKING ABOUT A PROCESS WHERE THE ISSUE

8    IS WHAT FACTS ARE CONSIDERED.  RIGHT?  THEY HAVE TO MAKE A

9    DETERMINATION BASED ON CERTAIN FACTS.  AND BECAUSE THEY'RE

10   WITHHOLDING CERTAIN DOCUMENTS, WE CAN'T EVEN TELL WHAT FACTS

11   WENT INTO THE SYSTEM BEFORE THE FINAL DECISION.

12        SO THAT'S ONE ISSUE.  AND, AGAIN, THE CONCEPT IS THE

13   FACTS AREN'T THEMSELVES DELIBERATIVE.  THAT'S WHY THEY

14   SHOULDN'T BE PROTECTED.

15        THE OTHER SORT OF SCOPE ISSUE WE HAVE IS THAT OUR

16   UNDERSTANDING OF THE LAW IS THAT IF YOU HAVE -- IF THE

17   GOVERNMENT TAKES THE POSITION -- SO LET'S SAY THE OFFICE OF

18   GENERAL COUNSEL SAYS, THE TPS STATUTE MEANS FACTS AND THIS IS

19   HOW YOU HAVE TO CONDUCT THE PROCESS, WELL, THEN THAT BECOMES

20   EFFECTIVELY THE LAW, AND YOU CAN'T ASSERT DELIBERATIVE PROCESS

21   TO PROTECT OR TO REFUSE TO DISCLOSE WHAT IS ESSENTIALLY

22   FUNCTIONING AS POLICY OR PRACTICE OF LAW WITHIN THE DEPARTMENT.

23        I THINK THE WAY THE NINTH CIRCUIT DESCRIBES IT IS THE

24   GOVERNMENT CAN'T HAVE A SECRET LAW, AND, OF COURSE, WE DON'T

25   KNOW SINCE WE CAN'T SEE THESE DOCUMENTS, BUT THERE ARE SEVERAL

```
1   DESCRIPTIONS THAT SUGGEST TO US THAT WHAT WE'RE LOOKING AT IS

2   SOME MEMO WHERE SOMEONE IS TELLING THEM, THIS IS HOW YOU HAVE

3   TO APPLY THE TPS, AND IF THAT'S THE CASE, THEN THAT ISN'T

4   SUBJECT TO THE DELIBERATIVE PROCESS, AT LEAST AS WE --

5           THE COURT:  OKAY.

6           MR. COMMONS:  -- UNDERSTAND NINTH CIRCUIT GUIDANCE ON

7   THIS.

8           WE, OF COURSE, HAVE OUR GENERAL POINT, YOUR HONOR.

9           YOUR QUESTION SORT OF PRESUMED THE PRIVILEGE APPLIES,

10  BUT, AGAIN, THE LAW IS -- AT LEAST AS WE UNDERSTAND IT, IS THAT

11  SINCE THE ALLEGATION GOES TO THE INTENT OF THE DECISION MAKER,

12  WHICH IS EXACTLY WHAT WE HAVE HERE -- THERE'S AN EQUAL

13  PROTECTION VIOLATION WHICH HAS SURVIVED THEIR MOTION TO

14  DISMISS -- THEN THE GOVERNMENT CAN'T AT THE SAME TIME SAY,

15  WELL, THIS IS DELIBERATIVE, SO WE DON'T HAVE TO DISCLOSE IT,

16  WHEN THAT'S THE VERY POINT OF THE LAWSUIT IS TO UNDERSTAND

17  WHETHER THEIR INTENT WAS TO VIOLATE THE CONSTITUTION IN SOME

18  WAY BY VIOLATING THE EQUAL PROTECTION.

19          AND WE HAVE SEEN AND THERE ALSO ALREADY IS, BOTH IN

20  MEDIA REPORTS AND IN DOCUMENTS, EVIDENCE TO SUGGEST THAT THIS

21  PROCESS WAS DONE TO TRY TO ACHIEVE A CERTAIN RESULT, AND

22  DEFINITELY DID HAVE A DISPARATE IMPACT, AND WE HAVE SURVIVED A

23  MOTION TO DISMISS.

24          AND IF THE COURT WERE TO FIND THAT WE PROPERLY

25  ALLEGED, AS WE HAVE, THIS INTENT (INDISCERNIBLE) CONSTITUTIONAL
```

1    CLAIM, THEN THIS DELIBERATIVE PROCESS PRIVILEGE FALLS AWAY

2    ENTIRELY.  NOW, AGAIN, THE COURT IS FREE TO MAKE A WEIGHING.

3    THAT IS PART -- IN TERMS OF THE SCOPE, THAT'S PART OF THE

4    ISSUE.

5            AS FAR AS HOW TO DEAL WITH THIS, ONE SUGGESTION WE

6    HAVE FOR THE COURT, GIVEN THAT THERE ARE THOUSANDS OF ENTRIES,

7    IS THAT THE PARTIES, EITHER WORKING TOGETHER OR HOWEVER WE'RE

8    GOING TO DO IT, OUR SUGGESTION WAS THAT SINCE PLAINTIFFS WERE

9    THE ONES COMPLAINING, THAT WE PULL OUT SOME SET NUMBER FROM THE

10   PRIVILEGE LOG, THAT WE PROPOSE 25, 30 --

11           **THE COURT:**  ALL RIGHT.  FOR ME TO REVIEW?  I THOUGHT

12   ABOUT THAT AS WELL, SO --

13           **MR. COMMONS:**  RIGHT.  BECAUSE THE 2,000 SEEMS LIKE --

14           **THE COURT:**  YEAH.

15           **MR. COMMONS:**  BOTH A BURDEN FOR THE GOVERNMENT TO

16   PULL THEM, BUT ALSO THAT SEEMS OVERWHELMING TO THE COURT.

17           **THE COURT:**  HERE'S WHAT I WOULD SUGGEST RIGHT NOW,

18   BECAUSE EVEN TO MAKE A DECISION ABOUT THE PRIVILEGE, I THINK I

19   NEED TO LOOK AT SOME DOCUMENTS IN CAMERA.  SO WHAT I WOULD SAY

20   IS THIS:  MR. COMMONS, YOU IDENTIFY TEN DOCUMENTS YOU WOULD

21   LIKE THE PLAINTIFFS TO PRODUCE TO ME IN CAMERA FOR REVIEW, AND,

22   MR. SNELL, YOU PICK TEN DOCUMENTS YOU WANT ME TO REVIEW IN

23   CAMERA.

24           COULD YOU GET THAT TO ME TOMORROW OR BY MONDAY,

25   BECAUSE THAT WOULD HELP ME A LOT.  AGAIN, TALKING ABOUT

1   SOMETHING IN THE ABSTRACT IS OFTEN SO DIFFERENT FROM ACTUALLY

2   SEEING THE FACTS OR THE DOCUMENTS THEMSELVES.  IS THAT

3   POSSIBLE, COULD YOU DO THAT AND SEND IT TO ME BY ELECTRONIC

4   FORMAT?

5          **MR. COMMONS:**  YOUR HONOR, DO YOU MIND IF I DIRECTLY

6   ADDRESS A QUESTION TO MR. SNELL.  I KNOW WE'RE SUPPOSED TO ONLY

7   SPEAK DIRECTLY TO YOU, BUT DO YOU MIND IF I ASK HIM A QUESTION?

8          **THE COURT:**  OKAY.

9          **MR. COMMONS:**  THE ONLY QUESTION I HAVE, YOUR HONOR,

10  WE CAN SEND HIM OURS LATER TODAY, OUR LIST OF TEN.  I DON'T

11  KNOW WHETHER THAT WILL BE ENOUGH -- SUFFICIENT TIME FOR HIM.

12  THAT'S MY ONLY COMMENT.

13         **THE COURT:**  OKAY.

14         **MR. COMMONS:**  WE COULD SEND HIM OUR TEN TODAY.

15         **THE COURT:**  OKAY, OKAY.  I'M NOT GOING TO PUT A

16  DEADLINE ON IT.  I'M JUST GOING TO SAY GET IT TO ME AS SOON AS

17  POSSIBLE.  MR. SNELL -- RIGHT.

18         **MR. SNELL:**  UNDERSTOOD, YOUR HONOR.  YEAH, WE WILL

19  GET THEM AS SOON AS POSSIBLE.

20         **THE COURT:**  RIGHT.

21         **MR. SNELL:**  JUST FOR CONTEXT, WE DO HAVE A 30(B)(6)

22  DEPOSITION TOMORROW.

23         **THE COURT:**  RIGHT, I UNDERSTAND.  HERE'S WHAT I SAY

24  ABOUT HOW TO GET THE DOCUMENTS TO ME, RATHER THAN PUTTING IT ON

25  A DISK AND FED-EXING IT TO ME, YOU CAN SEND IT TO ME AS AN

1   ATTACHMENT TO MY SKPO EMAIL ADDRESS, WHICH IS ON MY COURT

2   WEBSITE, AND IT'S PROTECTED.  ONLY I AND MY STAFF REVIEW THAT.

3            SO GIVEN THAT THE VOLUME OF DOCUMENTS IS ONLY GOING

4   TO BE 20 DOCUMENTS -- IF YOU HAVE TO SPLIT IT UP, THAT'S FINE

5   IN A COUPLE OF DIFFERENT EMAILS IF IT DOESN'T GO THROUGH.  THAT

6   WOULD BE THE FASTEST WAY TO GET IT TO ME.  IN OTHER WORDS, JUST

7   .PDF THEM, PUT AN ATTACHMENT TO AN EMAIL AND SEND IT TO MY SKPO

8   EMAIL BOX.  THAT WILL CUT DOWN SOME OF THE TRAVEL TIME.

9            **MR. SNELL:**  UNDERSTOOD, YOUR HONOR.

10           **THE COURT:**  OKAY.

11           **MR. SNELL:**  WE'LL DO IT AS SOON AS POSSIBLE.  WE'LL

12  CONFER WITH MR. COMMONS ON HIS TEN.

13           **MR. COMMONS:**  THANK YOU, YOUR HONOR.

14           AND I'LL TRY TO BE QUICK.  THE LAST ITEMS --

15           **THE COURT:**  ONE MORE THING I WANT TO SAY.  SO MY CRD

16  IS ALSO RECOMMENDING THAT YOU E-FILE ON THE ECF SYSTEM THE LIST

17  OF DOCUMENTS, IN OTHER WORDS, SO I'LL HAVE A PRECURSOR EVEN

18  BEFORE I GET THEM SO I CAN MATCH THEM UP.

19           IN OTHER WORDS, MR. COMMONS, WHEN YOU IDENTIFY THE

20  TEN DOCUMENTS, JUST FILE A LETTER BRIEF ON ECF SAYING THESE ARE

21  THE TEN DOCUMENTS WE'VE CHOSEN AND REFER THEM TO THE PRIVILEGE

22  LOG, AND THEN, MR. SNELL, THE SAME THING.

23           **MR. SNELL:**  UNDERSTOOD, YOUR HONOR.

24           **THE COURT:**  OKAY.

25           **MR. COMMONS:**  WE'LL DO THAT.

1          **THE COURT:**  I WOULD LOVE TO GET IT BY TUESDAY AT THE

2     LATEST.  MEANWHILE, I'M GOING TO BE THINKING ABOUT THESE ISSUES

3     AND LOOKING AT THEM, BUT IF I SEE THE DOCUMENTS, IT MIGHT HELP

4     ME.

5          **MR. COMMONS:**  THANK YOU.  SO THESE ARE -- I'LL TRY TO

6     BE QUICK -- IS THAT THE FIRST SENTENCE IN THE ORDER, AT LEAST

7     IN TERMS OF ORDERS AS FOLLOWS, MUST PRODUCE THE ADMINISTRATIVE

8     RECORD IN FULL BY AUGUST 16, 2018.  MY UNDERSTANDING, WHICH I

9     CONFIRMED WITH DEFENDANTS' COUNSEL THIS MORNING, IS THAT THEIR

10    POSITION IS THEY HAVE PRODUCED THE ADMINISTRATIVE RECORD

11    ALREADY.

12         I THINK IT COULD BE HELPFUL, AT LEAST FROM THE

13    PLAINTIFFS' PERSPECTIVE -- I'M SURE THE GOVERNMENT HAS A

14    DIFFERENT VIEW -- IS THAT IF THE COURT EITHER CLARIFIES THAT

15    THAT INCLUDES -- THAT FIRST SENTENCE IS MEANT TO INCLUDE THE

16    REQUEST THAT THE COURT -- DISTRICT COURT SPECIFICALLY ORDERED

17    BE PRODUCED OR AT LEAST RESPONDED TO BY JULY 9TH, WHICH WERE

18    SORT OF AT THE SAME TIME AS THE ADMINISTRATIVE RECORD.

19         **THE COURT:**  OH, I SEE.  I SEE.  OKAY.

20         **MR. COMMONS:**  YEAH.

21         **THE COURT:**  WHAT (INDISCERNIBLE) REQUEST FOR THOSE?

22         **MR. COMMONS:**  I MEAN, AGAIN, I'M SURE THE DEFENDANTS

23    MAY HAVE A DIFFERENT VIEW.  OUR VIEW, THE PLAINTIFFS' VIEW, IS

24    ALL OF THE DISCOVERY -- ALL OF OUR FIRST SET OF REQUESTS FOR

25    PRODUCTION SHOULD BE RESPONDED TO BECAUSE THIS ISN'T -- WE'RE

1   NOT ASKING FOR EXPEDITED DISCOVERY.  WE'RE TALKING ABOUT

2   DISCOVERY REQUESTS WE SENT TO THEM FOUR MONTHS AGO.  WHICHEVER

3   VERSION OF THE PARTIES' FACTS WE LOOK AT, IT'S BEEN MORE THAN

4   30 DAYS, AND SO WE WOULD -- AND THESE ARE MATERIALS THAT THEY

5   HAVE GATHERED -- CERTAINLY NO LATER THAN JUNE 15TH THEY HAD

6   THESE MATERIALS THAT THEY'RE PULLING THESE THINGS FROM AS A

7   (INDISCERNIBLE).

8           SO WE WOULD ASK JUST, TO CLARIFY, THAT IT'S AS TO ALL

9   OF OUR REQUESTS FOR PRODUCTION.  IF THE COURT DOESN'T WANT TO

10  DO THAT, THEN I WOULD ASK AT A MINIMUM FOR THE REQUEST THAT THE

11  DISTRICT COURT SPECIFICALLY IDENTIFIED BACK WITH A MOTION TO

12  DISMISS IN LATE JUNE.

13          **THE COURT:**  OKAY.  SO WHAT WERE THOSE SPECIFIC

14  REQUESTS THAT THE DISTRICT COURT IDENTIFIED?  AND WAS THERE A

15  DOCKET NUMBER ASSOCIATED WITH THAT?  IS THERE A TRANSCRIPT --

16          **MR. COMMONS:**  THERE IS A DOCKET -- YES, THERE IS A

17  DOCKET NUMBER.  I HAVE IT RIGHT HERE.  I'M JUST MOVING MY PILE

18  OF PAPERS TO GET TO IT.

19          THERE'S TWO DOCKET ENTRIES THAT SAY THE SAME -- THAT

20  HAVE THE SAME LIST OF ITEMS.  IT'S THE DISTRICT COURT'S -- I

21  BELIEVE IT'S DOCKETS 34 AND 35.  HERE WE GO.  IT'S THE

22  ABBREVIATED ORDER ON THE MOTION TO DISMISS.  DOCKET 34 IN THE

23  LAST PARAGRAPH IDENTIFIES ROG 1, WHICH THEY RESPONDED TO, SO WE

24  DON'T BELIEVE YOU HAVE TO TAKE FURTHER ACTION ON THAT.

25          IT'S REQUESTS FOR PRODUCTION NUMBERS 1, 4, 6, AND 7.

1          **THE COURT:**  SO, BASICALLY, ONLY DISPUTING 4, 6 AND 7,

2   OR MORE?

3          **MR. COMMONS:**  THOSE ARE THE ONES THE COURT

4   SPECIFICALLY DIRECTED THEM THEY HAD TO ANSWER BY JULY 9TH.

5          **THE COURT:**  OKAY.

6          **MR. COMMONS:**  OUR VIEW IS THAT -- AND THEN HE ORDERED

7   THE PARTIES TO MEET AND CONFER AS TO THE REMAINING OF THEM,

8   WHICH WE HAVE DONE, AND THAT'S WHY WE -- THAT'S WHY WE MOVED.

9   OUR VIEW IS THAT THEY COULD JUST -- MY UNDERSTANDING, AGAIN, IS

10  THAT THEY COLLECTED THESE MATERIALS BACK IN JUNE.  THEIR

11  POSITION IS THAT IT'S EXPANSIVE, SO IT SHOULD INCLUDE ANY OF

12  THE MATERIALS WE ASKED FOR IN OUR FIRST SET.  WE WOULD ASK THEY

13  RESPOND TO OUR FIRST SET WHICH WE HAD DESIGNED WITH A

14  PRELIMINARY INJUNCTION IN MIND.

15          THE DISTRICT COURT ASKED US, IF YOU HAD TO PICK THE

16  ONES, YOU KNOW, YOU COULDN'T ACTUALLY LIVE WITHOUT, THAT WAS

17  THE SUBSET WE CAME UP WITH, AND THAT'S WHAT THE JUDGE --

18          **THE COURT:**  I SEE.

19          **MR. COMMONS:**  -- HAD LIMITED --

20          **THE COURT:**  AND HAVE THE DEFENDANTS PRODUCED 4, 6,

21  AND 7?

22          **MR. COMMONS:**  MY UNDERSTANDING IS THEY HAVE NOT

23  COMPLETED IT BECAUSE IT'S WITHIN -- IT'S WITHIN THIS GROUP OF I

24  THINK WHAT IS NOW -- WAS ORIGINALLY 35-, HAS NOW BEEN DESCRIBED

25  AS 22,000 DOCUMENTS.  THOSE MATERIALS THAT WE'RE ASKING FOR ARE

1    SOMEWHERE WITHIN THERE.

2              **THE COURT:**   OKAY.  I APOLOGIZE.  I MISUNDERSTOOD.

3         **MR. SNELL:**   YOUR HONOR?

4         **THE COURT:**   GO AHEAD, MR. SNELL.

5         **MR. SNELL:**   YOUR HONOR, THIS IS KEVIN SNELL.  IF I

6    COULD JUST RESPOND TO A FEW OF THE POINTS THAT MR. COMMONS

7    MADE?

8              FIRST, I THINK IT'S JUST IMPORTANT FOR CONTEXT THAT

9    WE REMEMBER IT WASN'T JUST ONE ADMINISTRATIVE RECORD THAT WE

10   PRODUCED, WE PRODUCED, IN FACT, FOUR, BECAUSE THERE ARE FOUR

11   DIFFERENT COUNTRIES AS ISSUE IN THIS ACTION.

12             AND MR. COMMONS IS CORRECT THAT WE DO VIEW THOSE

13   ADMINISTRATIVE RECORDS AS COMPLETE.  I KNOW THERE'S BEEN

14   DISPUTE AMONG THE PARTIES ABOUT THAT, AND WE BRIEFED THAT IN

15   FRONT OF JUDGE CHEN, AND JUDGE CHEN, YOU KNOW, HE ACKNOWLEDGED

16   THE FACT THAT BECAUSE WE HAD EXTRA RECORDS DISCOVERY GOING ON,

17   THAT, YOU KNOW, HE WOULD DEFER THE ISSUE OF THE COMPLETENESS OF

18   THE RECORD UNTIL A LATER STAGE.

19             WITH RESPECT TO THE DOCUMENT REQUEST FOR PRODUCTION

20   THAT MR. COMMONS IS JUST REFERENCING, WE'VE RESPONDED

21   SUBSTANTIALLY TO THESE REQUESTS.  AND TO FINISH PRODUCTION, I

22   UNDERSTAND, OF THESE REQUESTS WOULD REQUIRE US TO FINISH THE

23   22,500 DOCUMENTS, WHICH IS JUST GOING TO TAKE A SUBSTANTIAL

24   AMOUNT OF RESOURCES.  I MEAN, WE'VE ALREADY DEVOTED A

25   SUBSTANTIAL AMOUNT OF RESOURCES, BUT TO DO IT ON A TIMEFRAME

1    THAT, YOU KNOW, PLAINTIFFS HAVE REQUESTED AND TO FIND AMENABLE

2    IS JUST NOT FEASIBLE FOR US.

3          **THE COURT:**  ARE YOU GOING TO BE ABLE TO COMPLETE THE

4    PRODUCTION OF 4, 6, AND 7 BY AUGUST 16TH?

5          **MR. SNELL:**  I DON'T THINK THAT IS POSSIBLE.

6          **THE COURT:**  WHY?

7          **MR. SNELL:**  YOUR HONOR, AS I MENTIONED, WE STARTED

8    WITH 22,500 DOCUMENTS, OR THEREABOUTS.  I DON'T HAVE THE LATEST

9    FIGURE IN FRONT OF ME IN TERMS OF HOW MANY MORE WE STILL HAVE

10   TO GO.  BUT, YOU KNOW, WE'VE DEVOTED SUBSTANTIAL RESOURCES TO,

11   YOU KNOW, PROCESSING THROUGH THE ONES WE'VE BEEN ABLE TO.  I

12   STILL THINK THAT WE HAVE A GOOD WAYS TO GO IN THAT QUEUE BEFORE

13   WE CAN REACH THE END OF -- BEFORE WE CAN REPRESENT TO

14   MR. COMMONS THAT WE'VE FINISHED PRODUCTION.

15         BUT, AGAIN, I WOULD JUST -- I WOULD JUST WANT TO

16   REITERATE THAT THE CONTEXT OF THIS THAT'S COMING IN IS THAT WE

17   HAVE RESPONDED SUBSTANTIALLY TO THESE REQUESTS, AND, YOU KNOW,

18   PLAINTIFFS SHOULD HAVE PLENTY OF MATERIAL TO REVIEW FOR THEIR

19   PRELIMINARY INJUNCTION MOTION.

20         **THE COURT:**  OKAY.  I'M GOING TO TAKE A LOOK AT THIS

21   BECAUSE, I APOLOGIZE, I MISUNDERSTOOD THE DISPUTE.  SO I'M

22   GOING TO LOOK AT THE DOCUMENT REQUEST MORE CLOSELY, AND I'LL

23   PUT THAT IN AN ORDER AS SOON AS I CAN AS WELL, BECAUSE I KNOW

24   YOU'RE WAITING FOR THAT.

25         **MR. COMMONS:**  THANK YOU, YOUR HONOR.

1                   **THE COURT:**  OKAY.

2                   **MR. COMMONS:**  AND I WON'T BELABOR IT, BUT IN OUR

3     BRIEFS WE DO AT LEAST DESCRIBE NUMERICALLY THE PACE AT WHICH

4     WE'RE GOING IN TERMS OF DOCUMENT REVIEW.  I UNDERSTAND THE

5     DEFENDANTS' POSITION IS THEY'RE WORKING AS FAST AS THEY CAN.

6                   **THE COURT:**  RIGHT.

7                   **MR. COMMONS:**  THE PLAINTIFFS' POSITION IS IF YOU LOOK

8     AT THE NUMBERS, IT DOESN'T SUGGEST -- IT DOESN'T

9     (INDISCERNIBLE) NOT MAYBE AS FAST AS YOU MIGHT THINK, GIVEN THE

10    AMOUNT OF TIME THAT WE'RE GOING THROUGH THEM.

11                  THE OTHER ONE -- I'LL BE, AGAIN, BRIEF, YOUR HONOR.

12                  ON THE REDACTIONS, I JUST WANT TO BE CLEAR THAT -- SO

13    WE'RE ASKING FOR THESE DOCUMENTS BECAUSE WE'RE TRYING TO

14    DETERMINE -- WE'RE TRYING TO LEARN WHAT IT IS THAT PEOPLE WERE

15    LOOKING AT AND WHAT IS PART OF THE PROCESS.  AND WHAT WE'RE

16    HAVING -- WHAT WE'RE SEEING IS THEY'RE REDACTING PORTIONS OF

17    DOCUMENTS, INCLUDING SOMETIMES REMOVING ATTACHMENTS, OR

18    EXHIBITS TO A MEMO, OR ATTACHMENT TO AN EMAIL.  SO WE'LL HAVE

19    PART OF THE EMAIL.  SOME OF IT MAY BE REDACTED.  ONE OF THE

20    ATTACHMENTS, BUT WE DON'T HAVE THE NEXT ATTACHMENT, THEN WE

21    HAVE ANOTHER ATTACHMENT.  AND IT'S THE SAME WITH THE MEMO.

22                  AND I JUST WANT TO (INDISCERNIBLE) CLARIFY SO WE

23    KNOW, BUT THIS MEANS IF A DOCUMENT IS RESPONSIVE, THAT WE GET

24    THE FULL DOCUMENT.  AND, ALSO, IF THERE'S SOME REASONABLE

25    TIMELINE THE COURT WANTS TO SET SO THAT WE'RE NOT -- SO THE

1    PARTIES DON'T HAVE ANY DISPUTE ABOUT WHEN THIS SHOULD BE DONE.

2            I DON'T BELIEVE THERE ARE A LOT OF DOCUMENTS THAT

3    FALL IN THIS CATEGORY.  MY UNDERSTANDING IS PROBABLY LESS THAN

4    40.  BUT IF I'M WRONG, I HOPE DEFENSE COUNSEL CORRECTS ME.  BUT

5    MY UNDERSTANDING THIS IS A SMALLER SUBSET, BUT THIS HAS COME

6    UP, AND IT DOES IMPAIR OUR ABILITY TO UNDERSTAND THE CONTEXT OF

7    A DOCUMENT WHEN PARTS OF THE DOCUMENT OR THE ATTACHMENTS HAVE

8    BEEN REMOVED.

9            **THE COURT:**  MY POSITION ON THE NON-RESPONSIVENESS IS

10   THAT YOU CANNOT TAKE ANYTHING OUT OF A DOCUMENT OR ITS

11   ATTACHMENTS ON THE BASIS OF NON-RESPONSIVENESS.  YOU CAN ON

12   PRIVILEGE, BUT NOT ON NON-RESPONSIVENESS.

13           SO TO THE EXTENT I WAS NOT CLEAR IN MY ORDER, LET ME

14   CLARIFY THAT NOW, AND THAT I DO THINK THAT HAS TO BE COMPLETED

15   BY AUGUST 16TH AS WELL.  I DON'T KNOW WHAT THE SCOPE OF IT IS,

16   BUT THOSE ARE DOCUMENTS THAT HAVE ALREADY BEEN REVIEWED AND

17   PRODUCED, AT LEAST IN THE REDACTED FORM, SO I CAN'T IMAGINE

18   THAT IS GOING TO BE THAT BURDENSOME.

19           **MR. SNELL:**  YOUR HONOR, THIS IS KEVIN SNELL.  IF I

20   CAN JUST RESPOND?

21           I DO THINK THAT THAT WOULD BE QUITE BURDENSOME.  I

22   MEAN, IF WE HAVE -- AND WE WOULD RESPECTFULLY REQUEST YOU TO

23   RECONSIDER THE DECISION TO NOT BE ABLE TO REDACT THE

24   NON-RESPONSIVE MATERIAL.  IF WE COME ACROSS AN EMAIL STRING

25   THAT'S 15 PAGES LONG, YOU KNOW, THAT HAS ON ONE LINE TPS AND

```
1    HAITI IN IT, BUT, YOU KNOW, THE 15 PAGES OF EMAIL STRING IS
2    ACTUALLY ABOUT AN EMPLOYMENT REGULATION, LET'S SAY.  YOU KNOW,
3    WE STILL NEED TO REVIEW THAT 15-PAGE STRING TO SEE WHAT
4    APPLICABLE PRIVILEGES WOULD APPLY, NOTWITHSTANDING THE FACT
5    THAT, YOU KNOW, THIS ISN'T AN EMPLOYMENT LAW CASE.
6            SO I DO THINK THAT WOULD CREATE QUITE A BURDEN, AND,
7    THUS, WE WOULD RESPECTFULLY REQUEST RECONSIDERATION ON THAT.
8            IF I COULD ALSO JUST ADD ONE FURTHER PIECE OF
9    INFORMATION THAT WAS ACTUALLY JUST PROVIDED TO ME FROM OUR LAB
10   THAT MIGHT KIND OF HELP ILLUMINATE OUR DISCUSSION HERE, IS THAT
11   I UNDERSTAND THAT WE'VE PRODUCED -- I'M SORRY -- THAT WE HAVE
12   REVIEWED APPROXIMATELY 9,500 DOCUMENTS TO DATE, SO THAT KIND OF
13   PUTS IT INTO PERSPECTIVE IN TERMS OF THE RESOURCES THAT
14   HAVE GONE -- THE RESOURCES THAT THE GOVERNMENT HAS DEVOTED TO
15   THESE DOCUMENT PRODUCTIONS.
16           I MEAN, WE'RE TALKING ABOUT 9,500, AND THAT WAS, YOU
17   KNOW, WITH OUR ABILITY TO -- OR AT LEAST WITH OUR PRACTICE OF,
18   YOU KNOW, REDACTING NON-RESPONSIVE, WE HAVE, YOU KNOW, 18
19   PEOPLE AT DHS WHO ARE SPENDING TIME ON THIS, WHO ARE REVIEWING
20   DOCUMENTS, DOING A FIRST-LINE REVIEW.  THEY NEED TO GO THROUGH
21   MULTIPLE MORE LAYERS OF REVIEW BEFORE WE CAN GET THEM OUT THE
22   DOOR.  IT'S JUST AN INCREDIBLY LABORIOUS PROCESS.
23           THE COURT:  OKAY.  I'M NOT GOING TO RECONSIDER MY
24   POSITION ON THE NON-RESPONSIVENESS, BUT I MIGHT GIVE YOU A
25   BREAK ON THE TIMING IF YOU TELL ME THAT THE SCOPE OF THE
```

1   DOCUMENTS THAT ARE BEING WITHHELD ON THE BASIS OF

2   NON-RESPONSIVENESS IS OVERLY BURDENSOME.  DO YOU HAVE AN IDEA

3   OF HOW MUCH -- HOW MANY DOCUMENTS THERE ARE IN THAT CATEGORY?

4          **MR. SNELL:**  I -- NOT IN FRONT OF ME, YOUR HONOR, BUT

5   I CAN INQUIRE WITH THE LAB.

6          **THE COURT:**  OKAY.  GENERALLY SPEAKING, THAT'S MY

7   POSITION, AND I'M NOT GOING TO MOVE ON THAT.  OKAY --

8          **MR. SNELL:**  UNDERSTOOD, YOUR HONOR.

9          (SIMULTANEOUS COLLOQUY.)

10          **THE COURT:**  GO AHEAD.

11          **MR. SNELL:**  I APOLOGIZE, YOUR HONOR.  AND I -- JUST

12   ONE OTHER THING I MEANT TO RAISE.

13          WITH RESPECT TO THE SCHEDULING OF OR THE PACE IN

14   WHICH, YOU KNOW, DEFENDANTS HAVE PRODUCED DOCUMENTS, I

15   BELIEVE -- AND, MR. COMMONS, PLEASE CORRECT ME IF I'M MISTAKEN,

16   BUT I BELIEVE THE PARTIES LAID OUT THESE ISSUES -- THIS ISSUE

17   QUITE CLEARLY FOR JUDGE CHEN IN HIS JULY -- IN THE PARTIES'

18   JULY 17TH JOINT LETTER.  SO I JUST WANTED TO PUT THAT ON YOUR

19   HONOR'S RADAR --

20          **THE COURT:**  OKAY.

21          **MR. SNELL:**  -- AS SHE'S CONSIDERING THESE ISSUES.

22          **THE COURT:**  I WILL.  I'LL TAKE A LOOK AT THAT.

23          THANK YOU.

24          OKAY.  SO I'M WAITING TO GET DOCUMENTS FROM YOU

25   FOLKS, AND I'M GOING TO BE LOOKING AND TRYING TO GET AN ANSWER

1    TO YOU AS QUICKLY AS POSSIBLE ON THE REMAINING OUTSTANDING

2    ISSUES.

3              **MR. COMMONS:**  THANK YOU.

4              **MR. SNELL:**  THANK YOU, YOUR HONOR.

5              (PROCEEDINGS ADJOURNED AT 8:36 P.M.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1
<u>**CERTIFICATE OF TRANSCRIBER**</u>

2

3      I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

4  TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF

5  THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE

6  U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE

7  PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE

8  ABOVE MATTER.

9      I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR,

10  RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN

11  WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT

12  FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE

13  ACTION.

14

15                    _jmcolumbini_

16                    JOAN MARIE COLUMBINI

17                    SEPTEMBER 4, 2019

18

19

20

21

22

23

24

25